## Commonwealth ex rel. Phillips v. Phillips

*Wayne S. Luce,* for relators.

McCREARY, J., March 21, 1945.—This is a habeas corpus action instituted at the relation of James Phillips and Alice Phillips, the paternal grandparents of Carol Ann Phillips, a female child, to obtain custody of said child. At the time of the hearing the child was a little over two years of age, and she has been in the custody of her mother, Cynthia Phillips, respondent, since her birth on November 1, 1942. Part of the testimony in the case was taken on November 20, 1944, and by request of counsel a further hearing was had on Saturday, December 9, 1944.

From the testimony we find the facts to be as follows:

Relators, James Phillips and Alice Phillips, are the paternal grandparents of Carol Ann, the child involved, both residing in New Sewickley Township on Pine Run Road, sometimes referred to in the testimony as Freedom, Pa. Respondent, Cynthia Phillips, married James E. Phillips, the son of the relators, on December 6, 1941, and their child, Carol Ann, was born November 1, 1942. At the time of the hearing the father of the child in question was in the military service, having entered said service sometime prior to the birth of Carol Ann, and at the time of hearing he was and had been for a period of about twenty months in active service overseas. The child has been in the custody of her mother, Cynthia Phillips, ever since the time of the birth of the child, and is in her custody at the present time.

The principal ground on which relators base their request for the custody of the child is that sometime during the year 1943 Cynthia Phillips, respondent, committed adultery which resulted in the birth to her of a male child on or about July 20, 1944, at the Providence Hospital, Beaver Falls, Beaver County, Pa. There are acts of indiscretion testified to by relators and their witnesses which tend to show that Cynthia Phillips has not been a paragon of virtue since the departure of her husband in the military service of the United States, but none of them is of a very serious nature, and none of them is convincing enough to compel the court to deprive the mother of the custody of the child at the present time. It appears that on several occasions since her husband went into the military service, respondent, Cynthia Phillips, associated with a man by the name of Mike Zorich, attending motion picture shows with him, and having him, on occasion, at her home in New Sewickley Township and at the home of one Tillie Smith, a lady for whom respondent did housework during the months of June, July, and Au-

gust 1944. It was also testified that respondent, Cynthia Phillips, on two or three occasions was seen with her child in public places drinking a glass of beer.

Nowhere in the testimony does it appear that respondent in any way neglected her duty to care for her child. As a matter of fact, at least one of the witnesses for relators, Tillie Smith, testified positively that respondent gave every care and attention to the child which any mother could possibly give to a child during the period of two months that respondent resided at the home of the said Tillie Smith. The court had an opportunity to witness the antics of the child in court and to observe its tendencies as far as the mother is concerned, and it is our observation that the child has the appearance of being well taken care of and gives a distinct impression that there is a decided feeling of affection between the mother and the child.

The conduct of respondent in the respects recited above, concerning the conception and birth of the second child, cannot be too strongly condemned, but the important question is what is the best interest of the child between this date and the date when the father will return to civilian life. The writ of habeas corpus for the custody of a child is not employed to determine the legal rights of the parties to the suit as between themselves; the real inquiry is on the part of the Commonwealth as to the best interests and future welfare of the child. Since her birth the little girl has been under the care of the mother, and no fault has been found with her treatment of her. In his brief, relator frankly states that "admittedly, the record in the instant case discloses little evidence of outright neglect of the physical welfare of Carol Ann Phillips". As stated above, the child gives every indication of being well cared for, and her demonstrations in court show a mutual feeling of love and affection between the child and her mother. The child has not reached the age when she can understand that the mother has fallen

into a fatal error, and we feel that to take her, at her age, from the mother and place her in strange surroundings would probably be detrimental to her.

In view of the tender age of the child, we are of the opinion that her best interest requires that, for the present, she be left with her mother. When she has reached a greater age, or if conditions change, as, for example, by the return of the father from military service, he may file another petition or ask for leave to join in the present petition as an additional party relator. It is only on the child's account that we think it best not to take her from the mother at this time. The grandparents should have an opportunity to see the child at reasonable times, and if the parties cannot agree as to the time visits shall be made, the matter can be submitted, for further order, to the court.

At first we were of the opinion that the mother's act of adultery might be sufficient in and of itself to cause us to grant the custody of the child to relators, the paternal grandparents, at least until the return of the father from military service. By a careful analysis of the entire situation we are convinced that the best interest of the child, under the circumstances, will be served by permitting her to remain in the custody of her mother, at least until the father returns from military service. It is altogether possible that at that time the mother and father of the child in question may become reconciled, and in the event such a situation should arise it clearly would be contrary to the interests of the child to have her affections divorced from the mother in the interim.

The two cases which we consider as being proper guides for our determination of this particular case are Commonwealth v. Addicks et ux., 5 Binney 520, and Commonwealth ex rel. Kern v. Kern, 68 Pitts. 790. In the Kern case, a father endeavored to obtain custody of his three-year-old son from the child's mother who, while being separated from her relator husband, gave

birth to a second child begotten by another man, and at the time of the hearing in said case the respondent mother had custody of both the three-year-old son and the unlawfully begotten child, all of whom lived together in the same household. In said case it appeared that at the time of the hearing the illicit relationship of the respondent and her paramour had discontinued, and there was no testimony in that case that she was at the time of the hearing living a loose and profligate life. The court decided that the best interest and welfare of said child was the primary consideration and refused to take from the mother the custody of her three-year-old son. The language of the court in said case is as follows: .

"In this State the principle is well established that as between father and mother, the custody of the mother, if she be a fit and proper person, is preferred during the years in which the care of a child requires the oversight which can only be given by a mother."

The court in its dictum in the case above cited referred to the case of Commonwealth v. Addicks et ux., 5 Binney 520, wherein was involved the fact of adultery committed by a respondent wife who had custody of two daughters, 10 and 7 years of age, respectively, whose custody was being sought by their natural father. In said case it appeared that the respondent had married her paramour who had been named co-respondent in the divorce proceedings against her, and that the two daughters at the time of the hearing were living with their natural mother and stepfather. The court refused to take from the respondent mother the custody of said children. In delivering the opinion of the court, Chief Justice Tilghman said (p. 521):

"We have considered the law, and are of opinion, that although we are bound to free the person from all illegal restraints, we are not bound to decide who is entitled to the guardianship, or to deliver infants to the custody of any particular person. But we may in our

discretion do so, if we think that, under the circumstances of the case, it ought to be done. For this we refer to the cases of The King v. Smith, 2 Stra. 982, and The King v. Delaval, 3 Burr. 1436. The present case is attended with peculiar and unfortunate circumstances. We cannot avoid expressing our disapprobation of the mother's conduct, although so far as regards her treatment of the children, she is in no fault. They appear to have been well taken care of in all respects. It is to *them*, that our anxiety is principally directed; and it appears to us, that considering their tender age, they stand in need of that kind of assistance, which can be afforded by none so well as a mother. It is on their account, therefore, that exercising the discretion with which the law has invested us, we think it best, at present, not to take them from her. At the same time, we desire it to be distinctly understood, that the father is not to be prevented from seeing them. . . ."

We think reference should be made here to certain testimony on the part of Cynthia Phillips and her sister, intended to cast reflection on the good morals of James Phillips, one of the relators. We refer to testimony concerning certain conduct on the part of James Phillips alleged to have taken place on the day of the marriage of Cynthia Phillips to relators' son. We thought her unwarranted attack was cowardly, and was of such a nature that it could not be defended against by relator except by flat denial of the happening of the event. We are convinced that the event never did happen, and we do not hesitate to say that such testimony did not help respondent in the eyes of the court. We are convinced that both of the paternal grandparents of the child are decent, respectable citizens, and it is only because we are convinced that a change of custody and home for Carol Ann Phillips, at this time, might prove harmful and detrimental rather than beneficial to her best interests and welfare that we are refusing to transfer custody of the child at the present time. We feel that

the smooth continuity of her existence, both physical and emotional, would be interrupted with probable harmful results to her if we were to make an order other than the one we intend to make in this case, leaving her, until the return of her father, in the custody of her mother.